Fagan v. Department of Veterans Affairs, Appeal 7112 from last year. Ms. Daley, welcome back to the court. Good morning to you. Please proceed. And I'd like to express the thanks of the court for the pro bono efforts of you and your colleagues in representing Mr. Fagan, as you and your colleagues have been representing many veterans. On this case, tell us where the reversible error is. Well, Your Honor, we believe it's in the Veterans Court interpretation of 38 U.S.C. Section 5107B, which codified the so-called Benefit of the Doubt Doctrine, also known as the Doctrine of Equity. Well, help me in terms of Judge Schoellin's opinion. Where does she misstate what the provision means? Where is there a misinterpretation of Judge Schoellin's four pages of opinion? Her misinterpretation occurs on page A5, Your Honor, where she says that, in both this case and in Perman, the examiner was unable to render an opinion regarding nexus. Pursuant to Perman, the examiner did not render an opinion, and her remarks may constitute what may be characterized as non-evident. Your Honor, we submit that that is an interpretation of 5107B, interpreting evidence and excluding the opinion of the examiner in this case, because the examiner could not render an absolute opinion on the ultimate issue of nexus. But when you say excluded, I mean, the record was built below, not in the Veterans Court. And the physician's report wasn't excluded. It was admitted. So we shouldn't be talking about exclusion. It's plainly part of the record. It plainly was allowed in in these proceedings before it got to the Veterans Court. Correct, Your Honor. But the Veterans Court characterized it as non-evident. So when it came to balancing the evidence under the doctrine of equipose and looking at the positive and the negative evidence, the examiner's report, which was the only medical report in this case, was viewed as not evidence to be balanced under the doctrine of equipose. But isn't this just like the Hogan case, where that statement that it's non-evidence may be a matter of semantics and not substance? I would agree, Your Honor, that the case is similar. And actually, in that case, this court confirmed that the Veterans Court and the board must be considered all evidence. But I'd submit in this case that it's actually more than semantics, that it actually is substance once you look at the record in this case. And that it's actually further evidence, in Mr. Fagan's case in conjunction with the Hogan case, further shows that it's more than simply a semantic or a poor choice of words. Let me ask you this. Is it your understanding of the articulation by Judge Sholin that she was saying that an inconclusive medical report can never be evidence on service connection? I would submit that is what she's saying, Your Honor. And are you saying it's always evidence, or just in a case like this? I'm saying it's wrong to say it's not evidence. It's evidence for whatever it offers. And in the case of this, this actual medical report actually shows that the evidence is in equipoise on the issue of- That's the part I want you to clarify. How does this report show that it's in equipoise? The government emphasizes the wording of the question put to the doctor. And if her response was literally keyed to the words of the question, it's not so clear that it does suggest equipoise. Well, I would suggest her response actually does. The report notes that Mr. Fagan does suffer from hearing loss. The report also notes that he suffered from noise trauma during service that was unaccompanied by hearing protection, and that he had self-reported some exposure to noise. So the examiner's statement that due to the veteran's history of post-noise exposure, it is not possible to determine if further decrease in high frequencies for the left ear and high frequency loss in the right ear is related to military service suggests in and of itself that without that post-history noise exposure, she could have connected Mr. Fagan's hearing loss to his in-service ear. I thought she relied heavily on the failure of the Marine Corps when mustering Fagan out after two years of combat service in Vietnam to give him a proper ear test. And in contrast to the entry exam that had an audiometer test on the way out, they just used a very crude so-called whisper test. And the examiner seemed to say, therefore, I can't compare numbers going in with numbers coming out. Therefore, I can't figure out whether the cause was something that happened during the two years of tour of duty. Well, Your Honor, I'd submit that there's no other suggestion in the record of any other cause for his hearing loss other than noise. It's very well known that noise can cause hearing loss, which is why now people wear the hearing protection. And the examiner identified two sources, in-service and out-of-service. And what the examiner has said is, because of the out-of-service noise, she couldn't state definitively it was due to in-service. We'd submit that the positive evidence in the record is the fact that he was exposed to loud noise in-service, as well as the negative evidence being the exposure out of service. And the examiner's statement that, due to the post-military noise exposure, could not definitively state that it was in-service. But we see. You seem to feel there was evidence of in-service exposure. But in the penultimate paragraph of Judge Shulman's opinion, she refers to, quote, the absence of evidence linking appellant's bilateral hearing loss to service. Correct your honor, and we submit that as actually an error. Because in both the examiner's report, the examiner notes that the appellant had been exposed to loud noise from explosions, from working in an airplane, open airplane, and from rockets. And that the board itself noted that that's not inconsistent with the veteran's service. The fact that he was exposed to such loud noise being an in-service combat veteran. And so the statement that there is actually no evidence in the record connecting it to service, we would disagree with it and say that's why the Veterans Court, by dismissing or characterizing the examiner's report as non-evidence, erred. Let me ask you, on the record we have here, what if the Veterans Court had said, like Perman, the examiner has not been able to come to an opinion? So there's no evidence in terms of an opinion. However, I recognize the factual record that is recited in the report and that is in the record beyond that in terms of the documents. Would you be here today? Well, I think I would, your honor. I don't think that that still excludes the possibility or states definitively that his hearing loss was due to other causes other than noise or other than in-service noise. I think the distinction with Perman is that in that case they had concluded that there wasn't enough medical literature linking post-traumatic stress. So in terms of the error, I mean, the examiner said I can't come to an opinion. So there's no opinion there. But then the court in the hypothetical would have gone on and said, however, I recognize the other evidence in the record and that's noted in the report. And based on that, I see no reason to disturb the opinion of the board. What would there be within our jurisdiction to consider in that circumstance? Well, your honor, I think in that circumstance that perhaps there wouldn't be. But what we have here is the Veterans Court actually giving its interpretation of the statute and how it's going to characterize and what it's calling evidence that it will balance within the benefit of the doubt doctrine 5107B. And by characterizing that as it did in the Hogan case, which I think shows more than the fact that it's just troubling language, that it's actually showing an un-narrow interpretation that the Veterans Court is taking. And the result is that the benefit of the doubt doctrine that was supposed to provide a benefit to veterans that in close cases that it would go to the veterans, it really is becoming illusory. Because in the situation, if the examiner in this case could conclusively have determined that Mr. Fagan's hearing loss was either due to in-service noise or due to post-service noise, there would be no balance of the evidence. It would not be an equipose. But the fact that the examiner couldn't determine that, if that's treated as non-evidence, then again, the evidence in the record will not be an equipose. In most situations, in the situation with the veterans, there's only going to be one medical opinion. And if it requires that it be determinative, then the evidence will never be an equipose. You're saying the error here was not considering what the examiner said with respect to an opinion? Well, I think there's two errors. I think the Veterans Court actually didn't consider any of the examiner's report on the issue of nexus. But I think there's also the issue of, I think the government raised in their brief, as to whether the court was referring to just the examiner's statement, just the examiner's conclusion, or the entire report. And we'd submit that even if it's just the examiner's conclusion, that that statement isn't self-evidence. Because the examiner had said, but due to the absence, but due to the veterans' history of post-military noise exposure, they couldn't determine the actual source as between the two sources. And we would submit that that, in and of itself, is evidence, and demonstrates that the evidence in the case is an equipose. You're saying if an examiner is asked to come up with an opinion, and he or she comes back and says, I can't reach an opinion, I can't come to a conclusion on the question you've asked me, you're saying that's evidence? That can be evidence. Because in this case, it shows that there's only two sources of which that they've identified for his hearing loss in-service or post-service noise exposure. The fact that she couldn't determine between the two suggests that the evidence is as likely it's in-service as out-of-service. And that puts the evidence, the positive and negative evidence, in balance, and would submit that under the doctrine of equipose, Mr. Fagan should have gotten the benefit of the doubt. The examiner could have said that it was more likely due to post-service noise exposure, but the examiner did not say that. The examiner couldn't determine as between the two possible sources, which in and of itself, we would say, is the definition of the evidence being positively and negatively balanced and being in equipose. Given the fact that we don't have jurisdiction to evaluate and weigh the evidence, that our jurisdiction is limited to interpreting the statute, what interpretation of 5107B would you have us adopt? Well, I'd have it adopt that the veterans court must consider all evidence, the examiner's report, regardless of whether the examiner actually renders an ultimate opinion on the issue of nexus. And that they should be remanded to the veterans court and be required to consider the entire examiner's report on the issue. Isn't that essentially what we held in Hogan? I agree, Your Honor. It is what you held in Hogan. But in this case, they did not do it. This case was considered, actually, the decision was rendered by the veterans court before your decision in Hogan, and would submit that it's appropriate to remand and tell the veterans court again. If we've already interpreted the statute in the manner you're suggesting in Hogan, then the only question left is whether the court properly applied the law to the facts or weighed the evidence properly. And that's not something we could decide. Well, I'd submit, Your Honor, that the veterans court didn't actually apply the interpretation that you set forth in Hogan. And so therefore, it had actually, as in Hogan, set forth another erroneous interpretation of the statute. And I would agree that in Hogan, this court made clear that they should consider all evidence. And I think that in this case, the veterans court interpreted it incorrectly and did not consider all evidence. So then, are you saying that in talking about the examiner's report as non-evidence, that the veterans court was necessarily treating it as something that should have been excluded? Yes, Your Honor. I think that they were saying that. And when we look at the balance of the positive and negative evidence on the issue of service connection, they said that was not evidence to be weighed, that it was not evidence within the balancing. And so that, therefore, there was actually no evidence on the point of service connection. All right. You maybe want to save the rest for rebuttal, Ms. Venn. May it please the court. Let me ask you a procedural question. We have a four-page, single-judge, non-precedential decision, opinion by the Court of Appeals for Veterans Claim. And it doesn't say very much. It really could be characterized as a synopsis of the board opinion. If that characterization is fair, does that mean we are allowed to search the board opinion in trying to determine whether there was a legal error with regard to excluding evidence? Well, Your Honor, my first response is that the court's opinion is not merely a synopsis. It's a four-page, detailed review of the evidence. Well, I didn't expect you to agree with that. But what I'm saying is that if that were a fair characterization, wouldn't that authorize us to look at the board opinion and not just the court opinion in order to see whether there was a legal error of wrongly excluding proper evidence? Yes, I think it would be appropriate to look to the board opinion, which is even in greater detail and factual detail. Our position is that the board opinion is not merely a synopsis of the board opinion. In the opinion at page two, there's a critical sentence under the heading, findings of fact. It really should be singular, because there's only one finding of fact, which reads as follows. The veteran's bilateral hearing loss is first documented years after service and has not been medically related to his service. Now, wouldn't the reasonable interpretation of that be that there's no medical support for service connection? Which, of course, is correct, because the examiner wasn't able to render an opinion. But couldn't that same sentence, particularly the last half of it, be interpreted to reflect a belief on the part of the board member that only medical evidence could prove service connection in this case and that, therefore, the inconclusive opinion of the medical examiner was fatal to the veteran's claim despite his own testimony and despite the testimony of friends and relatives and co-workers and so forth? Right? Couldn't it be read that way? No, because the board goes on further to give the reasons and basis for the findings and explains in great detail what the findings of fact are and why there is no medical nexus to the service. We all agree there's no medical nexus. We all agree with that. The examiner said, I can't tell. So it's inconclusive. So there's no medical evidence. But there's a lot of lay evidence. And my concern is that it looks to me, maybe I'm wrong. This is why I want your help. It looks to me like the board member thought that only medical evidence could suffice, that lay evidence could not suffice. No, Your Honor, really what's going on here is that the board and the court considered all of the evidence, including the medical examiner's report, which is all they need to do to meet 5107B. But there was no probative evidence on nexus. Why not? Because the medical examiner. No, we all agree the medical examiner doesn't say anything. But there's lay evidence from the mother and the brother and others that when he went overseas to Vietnam, his hearing was fine. And as soon as he came back, we had to shout because he couldn't hear us. Well, this is exactly the kind of case where the court has no jurisdiction because it involves weighing the evidence. No, I'm not talking about weighing evidence. I'm talking about whether evidence is competent evidence or not. The lay evidence of the mother and brother was determined not to be probative because it was only their subjective recollections going 30 years back. And contrary. Where is that stated? That was in the. That it was too stale a recollection to be admitted. I didn't see that anywhere in the board opinion. That was in addendum 16. The board does not find the lay statement submitted by the veteran to be persuasive enough to overcome the lack of medical evidence on nexus. Yeah, but they don't say anything about because it's stale, because it's old, or because they're whatever. There's no explanation. It's just the conclusion that the lay evidence wasn't good enough. Well, I will try to find it, Your Honor. But I know that at one point, and perhaps it was the regional office that said that it was only subjective. The only explanation given is in the next sentence. Quote, none of these individuals are experts in hearing loss. Of course not. They're all lay people. We know they're not experts. Right. And then the board member goes on to say, and any opinion they give as to the veterans having hearing loss after service is therefore not probative. In other words, it can't count because they're just lay people. Now, in some circumstances, that's probably exactly right, that only a medical examiner's evidence would have any competence. But in the case of hearing loss, it seems to me a good argument could be made that that's quite different, that even lay people can tell whether their brother can hear them in a conversation or not now compared to a couple of years ago. I think this, my answer in part responds to the argument made by Petitioner that exposure to noise was not the only possible source of hearing loss. No, no, no, stay with me. I'm looking at a statement by the board member, which is the only explanation for why the lay evidence was wholly discounted. And the statement is they're not experts, and therefore their opinion is a zero. But it doesn't take expertise to detect hearing problems. We all have grandfathers who don't hear well anymore, and you have to yell for them to be heard. So it is something that a lay person can have a probative opinion about. But the board seemed to say no. Well, in this case, and this is especially the role of a fact finder to determine whether the lay testimony about that this veteran could not hear very well over the course of 30 years was probative or persuasive, which is exactly why the board has nothing to do with 30 years. The lay testimony was as soon as he came back. The brother even says after basic training, his hearing was still fine. Then he went to Vietnam. After Vietnam, his hearing was terrible. So it's not a question of 30 years later. The lay testimony was right after he returned, there was a noticeable hearing loss. Even all of us in the family, in the neighborhood, and the job place all noticed it. The lay testimony was given 30 years later because the board and the regional office determined that the natural progression of the disease could have been a possible source of the hearing loss. There was no. There's no disease here. There's no disease. The natural progression of the hearing loss, whether that's a disease or not, but the condition. What is important here is that that was not ruled out. At addendum 13 on the board's decision and a joint appendix at 168, the regional office considered that noise was not the only possible source of the hearing loss. Where are you? Addendum 13 in the board's decision. We're on 13. The final paragraph, it's on the left side page, when the board was trying to look at whether. What's the language? In order to rebut the presumption of aggravation, there must be clear and unmistakable evidence, obvious or manifested. The increase in severity was due to the natural progress of the disability. That's just a statement of law. That has nothing to do with facts of this case. Well, in addendum 16, the appendix at 168, when the regional office decision went through a lot of detail on the facts and quoted the applicable regulations in the conclusion at 168, the second paragraph in connection with service connection for the left ear, there's no evidence that the hearing loss that you exhibit in the left ear prior to and at entry to service worsened beyond the normal progression as a result of your active duty. So it's not correct to say that the only two possible sources of the hearing loss was noise exposure. Well, how about the other ear? The other ear had no hearing loss on the entrance exam and had rather severe hearing loss when tested by the VA doctor. Well, again, over, and this goes to looking at the totality. Your point is that if there was a pre-existing injury, it might have gotten worse on its own, not from noise in Vietnam. And that might be true, perhaps, with regard to the ear that had a pre-existing hearing impairment. But how could that have any relevance to the other ear that did not have any impairment on the entrance test? Because there were no complaints for 30 years about hearing loss in the other ear. There was no evidence of any, for example, acoustic noise trauma in service. There was plenty of evidence of post-service exposure to loud noises without hearing. Have you read his testimony? Yes. Talks about daily rocket attacks and ground combat operations, explosions, gunfire, screaming jet aircraft, low overhead. Yes, and the board, they considered all that. It took that as lay evidence in support of the veteran, even though his official duties didn't describe it. There's no dispute that they accepted that testimony from the veteran, that during service, he was exposed to loud noises. But then 30 years later, he comes in. And without any medical complaints during that time, medical examinations, anything else, the medical examiner considered absolutely everything. And so did the board and the court. But the medical examiner could not make a decision, in part due to all of that self-reported exposure to noise. It was not possible to determine a nexus. You read his testimony in front of the board and also the RO, but particularly in front of the board, as suggesting that occasional use of a weed whacker machine or occasional hunting trip equated with daily explosions of rocket attacks on the Marine Corps base. Doesn't that just defy reality? Well, for one, your honor, it's not a judgment that lawyers can make. The medical examiners make that based on science and- I'm talking about the lay testimony. We all know the medical examiner couldn't make anything out of it. We agree with that. She agrees with that. Everybody knows that's the case. The question is, was the lay evidence in equipoise or anything close to equipoise? And I'm having a hard time understanding how anybody could consider it in equipoise if you compare daily rocket attacks for two years, on the one hand, with occasional hunting trips or weed whackers in the ensuing post-service period. It just doesn't seem reasonable to me. It's entirely reasonable, your honor, because it wasn't necessarily just occasional. It was exposure to weed whackers hunting all kinds of things over a 30-year time period. And the medical examiner who's in the best position to make a competent medical judgment about whether there was a nexus or not could not do that, given, in part, the 30-year time and, in part, all the other things. I may be misinterpreting this, but it sounds to me as if you and Judge Sholin and the board member Kilcoyne and the RO all basically have the unarticulated view that only a medical examiner report that's positive can establish service connection. No, your honor. That's not necessarily so. It may have been that a lay report of some horrific acoustic trauma to a veteran, say, five or 10 years later, might have created a different balance here for the fact finder. Or there could have been. There's no evidence that something exploded next to his ear after the time in service. Exactly. What I'm saying is there could be. I mean, in Hogan, the court. If the veterans department could show that he happened to be standing next to a place where a terrorist bomb went off, and that's why his hearing is screwed up, they would be disproving the theory of service connection. And it would be very decisive. But there's no such evidence in this record at all. No, and in that type of case, the medical examiner might weigh that along with everything else, which is what the fact finder said. He didn't need a medical examiner. Anybody could tell it was the terrorist bomb that wrecked his hearing. But there's nothing like that. No, there isn't anything like that. But again, it's. How about these facts? These facts show why the court lacks jurisdiction. This is a fact-bound case where the board and the court determined in the first instance, which, for example, this court has held in Ferguson, the blow would have valued any of the evidence. If you're right, we all agree. We all five lawyers agree. The three judges on the bench and the two advocates, we all agree there's no jurisdiction if it's fact-bound. That's what the statute says. So if your characterization that this is nothing but fact-bound, you win, we dismiss. No question about it. But it's not so clear that it's fact-bound if the adjudicator seemed to think lay evidence can't count for anything. The adjudicator. That's excluding the lay evidence. The adjudicator. That's illegal. Did not exclude the evidence. The adjudicator considered it along with everything else. It's under 5107B, the adjudicator is required to consider all the evidence, which is exactly what happened here. There was no exclusion, contrary to what Petitioner argues. It was quoted. When Judge Sholen says it's non-evidence, that could be read as exclusion. Again, at worst, that's a poor choice of words. How do we know that at worst it's just semantics? You say so, but it's not clear reading that opinion that it's just semantics. A reading of the peer review. Not clear to me, at least. I think I'm over, but. Don't go anywhere. OK. I'll stay right here. We may not be done with you. Now, you were referring to the RO's statement of the case, I believe. Yes. In the joint appendix. Yeah. Now, how does that help you? Well, that's part of the record. Of course. Of course. As a whole. And when the VA goes through this process, they give notice of what the issues are, what the evidence is, for example. That's what the statement of the case is about. Right. And what is it that's in that report that you think helps your case? Well, at appendix 152, when the RO lists the evidence considered, one of the items is the examination by the medical examiner, whose report contains a variety of types of information, audiometric results of ear testing and consideration of all that. It explains to the veteran what regulations will be considered. For sure. I've read it. I see what it is. It's quite long. It goes through a whole lot of things. Yeah, so there's plenty of notice. And what probative evidence is at appendix 161, it explains to the veteran how the regional office looks at each piece of evidence to determine whether it's probative or not. And then goes through the facts of the particular case and gives the basis for the denial here, which is. What specifically do they say in the concluding paragraph or so that you find so helpful to your case? Well, at 168, it goes through on the right ear, there was no evidence of hearing loss while in service and nothing within one year following separation that competently links or provides the nexus. Does it bother you that on the way into the Marine Corps, he had an audiometer test, but after two years of noisy combat, they just give him a whisper test, which is an extremely crude test and no way copy. You can't measure hearing loss unless you have numbers going in and numbers coming out. They gave him a kind of test where there are no numbers. The whisper test, you're correct, does not confirm one way or the other. I think that was a sufficient test to give a combat veteran on the way out of service. On the way in, they gave him the right test. But on the way out, after all the noise, they give him the crude, pitiful, non-quantified whisper test. Your Honor, I think it's not for us to determine in this case. But in any event, there was nothing from the veteran for 30 years about hearing loss. And under the Maxson case, the court has held a prolonged period of time without any evidence of medical complaints says something about nexus. And here you have 30 years. The RO then went on to say that lay statements had no probative value to the claim. So the RO. What troubles me, at every level, the RO, the board, and the veterans court, all the adjudicators seem to discount the lay evidence as a big zero, as if it can't be considered at all because it has no probative value. Well, they did consider it. And as a fact finder, deterrent can be probative. Yeah, they considered it as having zero value. That's not much consideration. Well, over 30 years, if the veteran, if his family members noticed he wasn't hearing well, or he noticed he wasn't hearing well, or whatever the reason. And again, under Maxson, the veteran waited 30 years, then. There's no statute of limitations. No, there isn't. He's not required within any specific period to file a claim. How can the Veterans Administration complain that he didn't file earlier? The VA is not complaining. It's just that in looking at the totality of evidence, it says something about the condition. There's no hearing tests for all that time. So in looking at everything, the medical examiner, whose report was considered, but basically said she couldn't tell one way or the other, weighing everything. Why doesn't that corroborate the equipoise of the lay testimony, further showing equipoise? There is no equipoise, because the lay evidence was determined by the fact finder to have little, if any, probative value. So was the medical examiner's statement. And then the board and the court looked at pre-service, in-service, and post-service exposure to noise. Also considered whether the normal progression of hearing loss might have been a factor, and found that there was no nexus, given the facts and circumstances of this case. There was no new rule announced or no interpretation at issue over which this court would have jurisdiction. It's a fact-bound case, where the fact finders weigh the evidence. Now we're just recircling. So we don't need to repeat. You made that point forcefully before. Well, let's give Ms. Daly a little rebuttal here. Thank you, Your Honor. Thank you very much. All right, Ms. Daly, two minutes. Thank you, Your Honor. I just have a couple points. One, in regards to it is our position. We do agree that this court can't reweigh or balance evidence, but that the Veterans Court actually misinterpreted 5107B in terms of how it's interpreting information and evidence as used in that statute. I'd also submit that there actually is medical evidence in the examiner's report. We believe the examiner's report strongly implies or suggests that Mr. Fagan's hearing loss is caused by exposure to noise. So I would submit that that is actually some medical evidence. The question is, which source of the noise? And we would also submit that the examiner's report, suggesting that it could be either source, puts the evidence in equipose, and the benefit of the doubt should go to the veteran on that point, unless you have any other questions. All right, we thank you both. The appeal is submitted.